

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

EJD:IC                                                                         *271 Cadman Plaza East*
F. #2024R00619                                                          *Brooklyn, New York 11201*

November 5, 2025

By ECF

The Honorable Natasha C. Merle
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:  United States v. Jamaul Aziz, et al.
       Criminal Docket No. 24-380 (NCM)

Dear Judge Merle:

    Pursuant to the Court's October 1, 2025 order, the government respectfully submits this letter in opposition to defendant Alberto Santiago's supplemental discovery motion, ECF No. 177 ("Santiago Supp."), and defendant James Bazemore's supplemental discovery motion, ECF No. 182 ("Bazemore Supp."), in which co-defendant Jamaul Aziz joins, see ECF No. 184.  In brief, the defendants supplement their motions asking the Court to compel the government to produce a variety of records allegedly in the custody of the Federal Bureau of Prisons ("BOP"), who the defendants claim are part of the criminal prosecution team.  See ECF Nos. 115, 118-21.

    The defendants' supplemental motions, in substance, make two arguments: first, that under the five factors articulated in United States v. Middendorf, No. 18-CR-36 (JPO), 2018 WL 3956494 (S.D.N.Y. Aug. 17, 2018), the BOP should be considered part of the prosecution team, and second, that newly cited cases warrant a finding that the BOP is part of the prosecution team.[1]  The defendants' arguments rely, however, on a distortion of the applicable and cited law and unsupported factual assertions.  The Court should deny the defendants' motions in their entirety.

---

    [1]  The defendants in the supplemental motions again misrepresent communications with the government.  For example, defendant Santiago claims that the government declined to disclose recorded calls made by the murder victim thirty days prior to the murder, but those were produced on March 28, 2025 at Bates number JOINTABS_000503 (AEO-SDM).  See Santiago Supp. at 1.

I.      Applicable Law

The government incorporates the applicable law as stated in its opposition to the defendants' discovery motions.  See ECF No. 135 at 5-6.  Though it does not repeat the totality of the applicable law as previously stated, the government highlights that the overarching inquiry when determining whether certain persons are part of a prosecution team is whether those persons "are 'an arm of the prosecutor.'"  United States v. Meregildo, 920 F. Supp. 2d 434, 440-41 (S.D.N.Y. 2013) (quoting United States v. Gil, 297 F.3d 93, 106 (2d Cir. 2002)).  The government's disclosure obligations extend to "information known to persons who are a part of the 'prosecution team' . . . who perform investigative duties or make strategic decisions about the prosecution of the case," including "police officers and federal agents who submit to the direction of the prosecutor and participate in the investigation."  United States v. Barcelo, 628 F. App'x 36, 38 (2d Cir. 2015) (citation omitted).

As applied to records in the custody of another government agency, a prosecutor's duty extends to reviewing such evidence only where the government conducts a "joint investigation" with that agency or branch of government.  See United States v. Rigas, 583 F.3d 108, 126 (2d Cir. 2009) (affirming district court opinion holding that there was "no joint investigation with the [SEC]² " and therefore the government did not need to produce documents in the custody of the SEC).  To determine whether the prosecution conducted a "joint investigation" with another agency, courts assess a number of factors, including "whether the other agency: (1) participated in the prosecution's witness interviews, (2) was involved in presenting the case to the grand jury, (3) reviewed documents gathered by, or shared documents with, the prosecution, (4) played a role in the development of prosecutorial strategy, or (5) accompanied the prosecution to court proceedings."  Middendorf, 2018 WL 3956494, at *4.

II.     Discussion

      A.      The *Middendorf* Factors Demonstrate that the BOP Is Not Part of the Prosecution Team

As discussed below, and in the government's opposition, see ECF No. 135 at 8-9, the factors articulated in Middendorf weigh in favor of finding that the BOP is not part of the prosecution team and did not engage in a joint investigation with prosecutors.

First, the Court must consider whether the BOP "participated in the prosecution's witness interviews."  Id.  In other words, the Court should weigh whether BOP officials conducted joint witness interviews with FBI agents to determine whether those officials acted as an arm of the prosecutor.  See United States v. Alexandre, No. 22-CR-326 (JPC), 2023 WL 416405, at *8 (S.D.N.Y. Jan. 26, 2023) (CFTC was not part of the prosecution team where "the Government did not conduct any joint interviews with the CFTC"); Middendorf, 2018 WL 3956494, at *5 (holding that no joint investigation occurred between the government and the

---

[2]      All defined terms carry the same definitions as set forth in the government's opposition to the defendants' discovery motions unless otherwise noted.  See generally ECF No. 135.

PCAOB where "[n]o PCAOB representative were present at any witness interviews conducted by the Government"); United States v. Connolly, No. 16-CR-370 (CM), 2017 WL 945934, at *7 (S.D.N.Y. Mar. 2, 2017) ("The Government's relationship with the SEC in this action is too attenuated for the SEC to be considered a member of the Prosecution Team. . . . [T]he Government did not conduct any joint witness interviews or coordinate depositions with the SEC."). Here, it is not in dispute that BOP staff never participated in any interview conducted by FBI agents at any point in the investigation; thus, the BOP is not part of the prosecution team. Cf. United States v. Gupta, 848 F. Supp. 2d 491, 493 (S.D.N.Y. 2012) (finding the SEC was part of the prosecution team and engaged in joint "fact-gathering" with the prosecution team where the SEC and United States Attorney's Office engaged in 44 joint witness interviews).

The defendants erroneously claim that the BOP "participated" in prosecution interviews because (1) the FBI was permitted to interview the defendants at the Metropolitan Detention Center ("MDC") on July 17, 2024 shortly after the murder occurred and (2) the BOP staff, on their own, conducted separate interviews after the murder. At the outset, the defendants do not cite, nor has the government identified, a single case in which "participation in the prosecution's witness interviews" has included conduct beyond joint witness interviews. But even so, the BOP did not "participate" in the FBI's interviews by "allow[ing] the FBI and NYPD entrance" into the MDC or providing the FBI with cups that the FBI could use to collect evidence and allowing the FBI to gather evidence within the jail. See Bazemore Supp. at 2-3. Moreover, as explained at the June 11, 2025 status conference, the BOP staff was not present for the FBI interviews of the defendants on July 17, 2024 (as is also evident from the video surveillance footage produced), and the audio recordings made by the FBI of the interviews have not been shared with any BOP personnel.

Next, the defendants claim that the BOP, by independently conducting 87 interviews of most inmates on the unit where the murder occurred and later providing records of those interviews to the prosecution team, somehow "participated" in prosecution interviews. Bazemore Supp. at 3. However, this claim is legally and factually incorrect. As the defendants concede, the FBI had no involvement in these interviews. Moreover, the sheer number of interviews that BOP personnel conducted independently demonstrate that the BOP and prosecutors acted separately. Cf. Gupta, 848 F. Supp. 2d at 493-94 (finding that the paucity of interviews conducted solely by the SEC, only two, when compared to the volume of interviews conducted jointly by the SEC and USAO, 44 interviews, weighed in favor of finding that the SEC was part of the prosecution team). The defendants also claim that the BOP "participated" in prosecution interviews because, as part of its criminal investigation, the government and FBI have subpoenaed various BOP reports regarding the murder, including reports of interviews with a confidential informant, whose identity was not provided to the government, as well as with BOP staff. Bazemore Supp. at 3. The defendants' argument is a non sequitur. The Court should reject the defendants' attempts to mischaracterize the prosecution's subsequent gathering of relevant evidence in furtherance of its criminal investigation as the FBI's "participation" in witness interviews at which they were not present.

Second, the Court must next consider whether BOP staff "was involved in presenting the case to the grand jury." Middendorf, 2018 WL 3956494, at *4. Here, the defendants do not dispute that no BOP officials or staff testified before the grand jury or were present at the grand jury presentation. Bazemore Supp. at 5 ("a BOP official did not personally

testify at the grand jury"). Rather, the defendants claim that the use of any evidence that the government obtained from the BOP during its grand jury presentation is sufficient to show that the BOP was "involved" in the government's grand jury presentation. The defendants' position contradicts case law in this Circuit. See Alexandre, 2023 WL 416405, at *8 (finding that because "neither the CFTC nor the Receiver was involved in the Government's presentation of evidence to the grand jury" the CFTC and Receiver were not a part of the prosecution team, despite approximately "99% of all documents produced by the Government" originating "from either the CFTC or the Receiver"); United States v. Collins, 409 F. Supp. 3d 228, 241-42 (S.D.N.Y. 2019) (finding that because "no one from the SEC attended sessions of the grand jury" and "transcripts of the grand jury presentations were not shared with the SEC," among other reasons, the SEC was not part of the prosecution team). Of course, law enforcement agents and the government routinely present evidence to the grand jury that was obtained by subpoena or otherwise from many different sources, including businesses and agencies, but that does not convert these businesses and agencies into part of the prosecution team. This factor, too, weighs against finding the BOP is part of the prosecution team.

Third, the Court should consider whether the BOP "reviewed documents gathered by, or shared documents with, the prosecution." Middendorf, 2018 WL 3956494, at *4. To begin, the defendants concede that the prosecution has never shared documents with BOP officials, Bazemore Supp. at 5 ("the undersigned are not aware that BOP officials reviewed documents gathered by the prosecution"), which demonstrates that BOP officials were not privy to information obtained by the prosecutorial investigative team. See Alexandre, 2023 WL 416405, at *6 (finding that where "the information sharing largely flowed only in one direction," a joint investigation did not occur). Instead, the defendants claim that because the government obtained evidence "generated by the BOP" as part of its investigation, the BOP is necessarily part of the prosecution team. Bazemore Supp. at 5-6. This argument also fails. The defendants do not dispute that the BOP produced records to the prosecution after being served grand jury subpoenas.[3] As such, the production of records to the prosecution team does not mean that the BOP was part of the prosecution team. See Gist v. United States, No. 16-CR-656 (GHW), 2021 WL 3774289, at *17 (S.D.N.Y. Aug. 24, 2021) (the BOP was not part of the prosecution where "[t]he Government obtained its records from the MCC by issuing grand jury subpoenas."). Moreover, even if the entirety of the BOP records were provided to the government by request and not subpoena, this does not transform the BOP into part of the prosecution team, so long as the government did not direct the BOP's actions or evidence collection. See Alexandre, 2023 WL 416405, at *6 (finding that the CFTC provided documents consisting of "roughly 99% of all

_____

[3]     The defendants speculate that the evidence obtained by the prosecution and FBI agents the evening of July 17, 2024 prior to the interviews of the defendants was not obtained pursuant to grand jury subpoenas. Bazemore Supp. at 6. That is incorrect; the prosecution served BOP officials with grand jury subpoenas the evening of July 17, 2024 as part of its criminal investigation. The defendants also suggest that the government has obtained post-indictment materials concerning the defendants citing to the government's standard request for defense counsel to identify attorneys and other legal personnel that should be excluded from potential jail call and other records obtained by the government. See Bazemore Supp. at 6. However, no BOP records have been subpoenaed or requested by the government after the filing of the indictment in this case.

4

documents produced by the Government" but were not a part of the prosecution team because the government "did not direct the CFTC or the Receiver to take any investigative actions"). In addition, as the defendants recognize, the materials the government obtained from the BOP were maintained or created by the BOP in its ordinary course of operating the MDC, not because of investigative actions directed by prosecutors. See, e.g., ECF No. 118 at 6-9 (defendant Aziz's explanation that he seeks records kept by the BOP pursuant to BOP policy). Without more, the government's gathering of evidence kept by the BOP in furtherance of its criminal investigation does not bring the BOP within the prosecution team. United States v. Pierre, No. 22-CR-19 (PGG), 2023 WL 8550322, at *11 (S.D.N.Y. Dec. 11, 2023) ("While Liberty Mutual provided documents to the Government – generally in response to a grand jury subpoena – and while the Crime Bureau informally provided limited information to the Government upon request, this assistance to law enforcement did not transform the relationship between the Government and these private agencies such that they can be said to have entered into a joint investigation.").

Fourth, the Court should consider whether the BOP "played a role in the development of prosecutorial strategy." Middendorf, 2018 WL 3956494, at *4.[4] The defendants cannot argue that this factor weighs in favor of finding that the BOP is part of the prosecution team. It, again, is not in dispute that the BOP was not consulted with respect to any charging decisions nor were BOP officials provided with draft indictments or prosecution memoranda. See Collins, 409 F. Supp. 3d at 241-42 (no joint investigation occurred where "the SEC was not involved in the USAO's discussion concerning who should be charged criminally and the USAO did not share drafts of the Indictment" and "the USAO did not share the prosecution memorandum used to make the criminal charging decision"); Alexandre, 2023 WL 416405, at *8 (no joint investigation occurred where "no one working for either the Receiver or CFTC was involved in developing the prosecution strategy, played a role in the Government's charging decisions, or has been designated a special Assistant U.S. Attorney."); Gist, 2021 WL 3774289, *17 (the BOP was not part of the prosecution team where "BOP personnel . . . were not involved in the Government's prosecution strategy"). To be sure, the defendants do not, and cannot, claim that BOP officials opined on what charges were to be included in the indictment, nor that BOP staff engaged in discussions with prosecutors as to whether the legal elements for each charged count were met by the evidence in the case—including evidence, such as the autopsy report, that no one at the BOP has ever seen.[5]

---

[4]    The defendants argue that the prosecution team encompasses individuals who are "not strategic decision-makers," Bazemore Supp. at 7 (citing Meregildo, 920 F. Supp. 2d at 441), but omit that individuals considered part of the prosecution team, must act as an arm of the prosecutor and "submit to the direction of the prosecutor" to aid in the government's investigation, id. Here, the defendants offer no factual support to demonstrate that the BOP's actions that the defendants' claim bring the BOP within the prosecution team—namely, taking photographs, collecting physical items such as weapons used in the murder, among others—were carried out at the direction of any prosecutor. Indeed, they were not.

[5]    The defendants' allegation that the government's description of the events is similar to that of the final SIS report is, likewise, unavailing, see Bazemore Supp. at 7; the defendants omit that the totality of the murder was captured on video surveillance footage. Thus,

Fifth and lastly, the Court must consider whether any BOP officials "accompanied the prosecution to court proceedings," or would do so. Middendorf, 2018 WL 3956494, at *4. Here, too, it is undisputed that BOP officials have not attended any court proceedings with the prosecutors, nor would they be present with prosecutors at counsel's table at a potential trial, as BOP employees are not law enforcement officers authorized to arrest the defendants nor prosecute them for any of the crimes charged in the indictment. See 18 U.S.C. § 3050 (explaining the limited powers of "Bureau of Prisons employees"). Indeed, the investigative agents in this case are FBI agents and officers who would accompany the prosecutors at any potential trial. The defendants' only argument that this factor weighs in favor of their position is that BOP staff may be called to testify at a potential trial. Bazemore Supp. at 8. But being subpoenaed to testify as a witness is not "accompanying the prosecution to court proceedings." Cf. United States v. Morell, 524 F.2d 550, 555 (2d Cir. 1975) (a government agent who "participated actively in [an] investigation," and "was present at counsel's table throughout all or most of the trial" was part of the prosecution team). This factor also demonstrates that the BOP is not part of the prosecution team. See, e.g., Alexandre, 2023 WL 416405, at *7 (finding that the CFTC was not part of the prosecution team where CFTC attorneys "merely sat in the gallery rather than joining the prosecutors at counsel's table" and "the purpose of their attendance . . . had nothing to do with furthering the criminal case").

For the reasons stated in the government's opposition to the defendants' discovery motions, see ECF No. 135, and above, the Middendorf factors necessitate a finding that the Bureau of Prisons is not a part of the prosecution team.

> B.     Cases Cited by the Defendants Support A Finding That the BOP is Not Part of the Prosecution Team

The defendants' cited cases also do not support their contention that the BOP is part of the prosecution team. The defendants argue that district courts within the Second Circuit have held that similarly situated agencies were deemed part of the prosecution team in Bin Laden, Gupta, and Martoma. See Bazemore Supp. at 1-11, Santiago Supp. at 4. But each of these cases is factually dissimilar to the circumstances here. In United States v. Bin Laden, in finding that the Marshals Service ("Marshals") was part of the prosecution team, the district court relied on actions taken by the Marshals at the direction of prosecutors, including spending "$78,000 of [the Marshals'] own money to install video-teleconferencing equipment" that would further the criminal investigation into al Qaeda by permitting "prosecutors and agents to contact [a cooperating witness] quickly in the event they needed him to identify photographs of possible al Qaeda terrorists." 397 F. Supp. 2d 465, 484 (S.D.N.Y. 2005). In this case, the defendants do not assert that the BOP engaged in any similar conduct to facilitate the government's criminal prosecution, and as discussed above, the records and documents obtained from BOP were kept in the ordinary course of BOP operations and consistent with BOP policy.

Likewise, in both Maratoma and Gupta, the courts relied on the extensive number of joint interviews conducted by the United States Attorney's Office and the SEC. United States v. Martoma, 990 F. Supp. 2d 458, 461 (S.D.N.Y. 2014) (highlighting that "[d]uring the

---

the events as described by the government are largely not in dispute, and objective viewers of the footage would likely describe the events in a similar way.

6

investigation of Martoma's conduct, the SEC and the USAO jointly conducted twenty interviews of twelve witnesses" in finding that the SEC and USAO engaged in a joint investigation); Gupta, 848 F. Supp. 2d at 493 ("[W]here the Government and another agency decide to investigate the facts of a case together—such as in these 44 witness interviews—the Government has an obligation to review the documents arising from those joint efforts to determine whether there is *Brady* material that must be disclosed."). As discussed above, the BOP did not conduct a single joint interview with FBI agents or prosecutors in this case, and certainly not 20 or 44 joint interviews; the courts' holdings in Maratoma and Gupta, are therefore, inapposite.

Similarly, the defendants' attempts to distinguish the district court's opinion in Gist, which held that the BOP was not a part of the prosecution team, are unpersuasive. See Bazemore Supp. at 10 (citing Gist, 2021 WL 3774289, at *17). Without factual analysis, the defendants argue that "[u]nlike the present case, the BOP officials in Gist did not participate in prosecution interviews, had no impact on the grand jury presentation or prosecution strategy and only produced documents pursuant to a grand jury subpoena." Id. But the defendants do not address why Gist is dissimilar from the instant case where the BOP staff in Gist engaged in similar conduct. As here, BOP staff in Gist: (1) "took photographs of the cell where the assault took place, the Gists and [the victim];" (2) interviewed the defendants Paul and Robert Gist; and (3) provided records to the FBI, including officer and lieutenant memoranda, "photographs of the scene and the Gists," and medical records of the victim and Paul and Robert Gist, among other things. Gist v. United States, No. 19-CV-5095, ECF No. 72 at 3-5 (S.D.N.Y. Jan. 19, 2021). Prosecutors also subpoenaed, and obtained, the defendant's disciplinary and call records from the BOP. Id. at 7. Moreover, the prosecutors in Gist explained that if the case had proceeded to trial, among other evidence, the government would have offered photographs of the area taken by BOP staff as well as "the testimony of the responding [BOP] officers, who witnessed [the victim's] injuries and photographed the scene." Id. at 6. For the reasons discussed in the government's opposition, see ECF No. 135 at 9, the Court should reach the same conclusion as the Gist court—that the BOP's investigation was "for penological purposes, not prosecutorial" and because "BOP personnel never participated in the Government's interviews, were not involved in the grand jury presentation, and were not involved in the Government's prosecution strategy," the BOP is not part of the prosecution team. Gist, 2021 WL 3774289, at *17.

Finally, the defendants' continued reliance on out-of-Circuit cases is also misplaced given the differing controlling standards, see ECF No. 135 at 9-10, and nevertheless, do not alter the conclusion that the BOP is not part of the prosecution team, as each case is readily distinguishable. In United States v. Bases, 549 F. Supp. 3d 822, 826 (N.D. Ill. 2021), see Santiago Supp. at 3, the district court found that the CFTC and the prosecutors engaged in a joint investigation where during the three-year investigation, both agencies, "jointly participated in interviews, meetings, and calls" concerning at least seventeen individuals, demonstrated coordinated investigative efforts by seeking "the production of documents from [a target] . . . within days of each other," and a CFTC attorney was detailed to work for the Department of Justice for over one year. In this case, however, there were no joint interviews, coordinated evidentiary collection, nor any detailed BOP employees.

The remaining out of district cases cited are also factually distinguishable and unpersuasive. See, e.g., Avila v. Quarterman, 560 F.3d 299, 308-09 (5th Cir. 2009) (holding that a testifying expert pathologist was not a part of the prosecution because the pathologist "acted

7

only in the capacity of an expert witness, . . . and not as a fully functioning member of the prosecution team") (internal quotation marks and citations omitted); United States v. Ramirez, 174 F.3d 584, 588 (5th Cir. 1999) and Government's Brief, 1998 WL 34078324, at *4 (the BOP officer acted as a lead investigator of a prison drug trafficking ring by "examin[ing] the visitor logs for the prison and" identifying the targets, "direct[ing] the visiting room officers to monitor [the targets'] visit closely," equipping a jailhouse informant with a body microphone and working with the FBI to direct the informant to "get [the targets] talking about the impeding drug transaction," among other things); United States v. Antone, 603 F.2d 566, 569-70 (5th Cir. 1979) (finding that FBI agents and Florida state law enforcement agents who had formed a joint task force to investigate the murder of a former police officer were both considered part of the prosecution team).[6]  Each of these cases include facts not present here—the work of an expert pathologist, a prison official who directed a proactive recordings and interactions in concert with the FBI concerning a prison drug trafficking scheme and the formation of a joint task force.

III.    Conclusion

For the reasons discussed above, the Court should deny the defendants' motions in their entirety.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York

By:    /s/ Irisa Chen
Irisa Chen
Assistant U.S. Attorney
(718) 254-6124

cc:    Clerk of the Court (NCM) (by ECF)
Defense Counsel (by ECF)

---

[6]    The defendants cite cases concerning disclosure of materials relevant to "death penalty aggravating factors," see Santiago Supp. at 4, but, as disclosed on September 22, 2025, the government has been authorized not to seek the death penalty.

8